# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In Re: I.J., W.J., G.J., & K.J.**

**No. 15-0201** (Taylor County 14-JA-19 through 14-JA-22)

**FILED**

June 15, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father C.J., by counsel Karen Hill Johnson, appeals the Circuit Court of Taylor County's February 3, 2015, order terminating his parental rights to I.J., W.J., G.J., and K.J. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary S. Nelson, filed a response on behalf of the children supporting the circuit court's order. On appeal, petitioner alleges that the circuit court erred in denying his motion for a post-adjudicatory improvement period and in terminating his parental rights instead of imposing a less restrictive dispositional alternative.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2014, the DHHR filed a petition against the parents and alleged that the mother had a prior conviction of felony child neglect on September 16, 2009. The petition further alleged that the mother recently drove the children while highly intoxicated, thereby endangering the children's safety. According to the petition, the mother was arrested for second offense driving under the influence. As to petitioner, the petition alleged that he failed to protect the children from the mother's extensive alcoholism. The circuit court held a hearing that same month and took in camera testimony from the three oldest children. Six-year-old G.J. testified that petitioner and the mother fight about the mother's alcohol abuse and sometimes engage in physical altercations. Nine-year-old W.J. also testified that his parents argue about the mother's alcohol abuse, as did ten-year-old K.J, though neither W.J. nor K.J. testified about physical violence in the home.

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

In August of 2014, petitioner filed a written stipulation at the adjudicatory hearing and admitted that his wife "has a propensity to drink alcohol to a point beyond the level of intoxication" and that he should have "taken more appropriate precautionary measures regarding the care of his children." However, petitioner mitigated his admission by stating that he believed that for someone to be an alcoholic, they have to consume alcohol every day and that his wife had not been drinking before he left them in her care on the day she was arrested for second offense DUI with the children in the vehicle. Petitioner also filed a motion for a post-adjudicatory improvement period.

During this hearing, the circuit court also read the details of the mother's prior arrest for child neglect into the record. According to the record, the mother's prior arrest occurred when law enforcement arrived at the home she shared with petitioner and found her unresponsive. Another man was in the home and refused to open the door for police. This individual eventually barricaded himself in the bathroom with two of the children. The mother had to be transported from the home by emergency personnel. The circuit court further read into the record the facts surrounding her discharge from the community corrections program, which included her continued alcohol abuse, attempts to flush her system of alcohol to avoid detection, lying to staff, and being caught having sex in a public park with a man while intoxicated. Despite the mother's conviction for criminal neglect of his children, petitioner stated that he did not know the details of that case or that the mother was subsequently discharged from the community corrections program because of her continued alcohol abuse. The circuit court specifically found that petitioner was in denial regarding the seriousness of the mother's alcoholism and its affect upon the children. The circuit court also found that petitioner's statement that he was unaware the mother's alcoholism continued unabated after her release from incarceration was contrary to the children's testimony that petitioner fought with the mother about that issue. The circuit court took petitioner's motion for an improvement period under advisement.

Following the adjudicatory hearing, petitioner received services to help him recognize and address the mother's alcoholism and his culpability in failing to protect the children. The circuit court then held a dispositional hearing in October of 2014. During the hearing, petitioner's service provider testified that petitioner told her he had done nothing wrong and that he saw no problem leaving the children in the mother's care. During the hearing, petitioner initially took the position that he was unaware the mother continued to abuse alcohol following her release. However, at the close of the hearing, petitioner stated by proffer that he wished to "modify his position" in this regard as he had acknowledged that he had suspicions about the mother's continued alcoholism and that is why the children reported arguments about this issue. Petitioner also stated that although he was "beginning to comprehend" the breadth of the mother's problems, he still did not understand all the issues. Ultimately, the circuit court denied petitioner's motion for an improvement period because he "turned a blind eye" to the mother's alcoholism and its effect on the children; his purported intention to divorce the mother was questionable; and his statements throughout the case were contrary to the evidence. The circuit court then terminated petitioner's parental rights. Petitioner appeals from the dispositional order.

The Court has previously established the following standard of review:

2

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court denying petitioner's motion for a post-adjudicatory improvement period or in terminating his parental rights.

To begin, petitioner argues that he should have been entitled to an improvement period because he made several stipulations and admissions throughout the proceedings, including that he was unaware of the facts of the mother's conviction for criminal child neglect; that he was aware his wife has a propensity to drink alcohol beyond the point of intoxication; and that he should have taken more precautions to ensure the children's safety. According to petitioner, these admissions, among others, established that he was willing to participate in a post-adjudicatory improvement period. However, the Court does not agree. As the circuit court specifically found below, petitioner failed to acknowledge his neglect of the children or how it negatively impacted them. This finding is supported by testimony from petitioner's service provider, who stated petitioner told her he did nothing wrong and that he still saw no problem leaving the children in the mother's care. Moreover, even at the beginning of the dispositional hearing, petitioner continued to deny knowing the mother was drinking in the home after her release from incarceration despite conflicting evidence, such as the children testifying that the parents fought about this very issue.

Pursuant to West Virginia Code § 49-6-12(b)(2), circuit courts have discretion to grant an improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . ." Moreover, in discussing improvement periods, we have previously held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

3

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). In the instant matter, it is clear that the circuit court did not abuse its discretion in denying petitioner's motion for a post-adjudicatory improvement period because of his failure to fully acknowledge the conditions of neglect in the home. As outlined above, petitioner minimized his role in the neglect throughout the proceedings by willfully disregarding the mother's alcoholism and its effect on the children. Despite the fact that the mother's criminal conviction was based upon neglect of petitioner's children that occurred in his home, he denied full knowledge of the facts until the circuit court read the same into the record. Moreover, even after receiving services designed to recognize the mother's alcoholism and his culpability in failing to protect the children from it, petitioner stated that he had done nothing wrong and would continue to allow the mother to care for the children. As such, it is clear that petitioner did not acknowledge his neglect of the children by failing to protect them from the mother, and denying him a post-adjudicatory improvement period was not error.

Further, the Court finds that the circuit court properly terminated petitioner's parental rights upon a finding that he could not substantially correct the conditions of abuse and neglect in the home. Pursuant to West Virginia Code § 49-6-5(b)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

The circuit court was presented with overwhelming evidence that petitioner failed to respond to the services implemented below. As addressed above, petitioner continued to deny any wrongdoing even after services implemented to address his role in the children's neglect.

Contrary to petitioner's argument that a less restrictive dispositional alternative existed, namely leaving the child in a legal guardianship with the paternal grandparents, the circuit court had no option but to terminate petitioner's parental rights. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected and when necessary for the child's welfare. Further, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49–6–5 . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49–6–5(b) . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). For these reasons, termination of petitioner's parental rights was not error.

For the foregoing reasons, we find no error in the decision of the circuit court and its February 3, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: June 15, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II